```
 1                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF CONNECTICUT
 2
                                    )
 3    MADINA S. MAMADJONOVA, et     )   No. 3:19-CV-01317-VLB
      al.,                          )   450 Main Street
 4                                  )   Hartford, Connecticut
                        vs.         )
 5                                  )   September 11, 2019
      WILLIAM BARR, et al.          )
 6    _____
```

```
 7       TRANSCRIPT OF MOTION FOR TEMPORARY RESTRAINING ORDER
```

```
 8          BEFORE THE HONORABLE VANESSA L. BRYANT
                 UNITED STATES DISTRICT JUDGE
 9
      TELEPHONIC APPEARANCES:
10    For the Petitioners:    SARAH T. GILLMAN, ESQ.
                              Rapid Defense Network
11                            11 Broadway
                              Suite 615
12                            New York, NY 10004
```

```
13    For the Petitioners:    DIANA R. BLANK, ESQ.
                              New Haven Legal Assistance Assoc.
14                            Inc.
                              426 State Street
15                            New Haven, CT 06510
```

```
16    For the Respondents:    JOHN W. LARSON, ESQ.
                              U.S. Attorney's Office-HFD
17                            450 Main St.
                              Room 328
18                            Hartford, CT 06103
```

```
19    For the Respondents:    MICHELLE L. MCCONAGHY, ESQ.
                              U.S. Attorney's Office-NH
20                            157 Church St.
                              25th Floor
21                            New Haven, CT 06510
      ECR Operator:           L. PIPECH
22
                        Aliza Blumenfeld, CET-634
23                           eScribers, LLC
                          352 Seventh Avenue
24                             Suite #604
                          New York, NY 10001
25                           (973) 406-2250
```

1                          I N D E X

2    Motion for temporary restraining order
     denied as specified:                            14
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy

(12:03 O'CLOCK, P.M.)

1

2        THE COURT:  Who's representing the Government this

3    afternoon?

4        MR. LARSON:  Good afternoon, Your Honor.  It's John

5    Larson from the U.S. Attorney's Office, on behalf of the

6    Respondents.  On the line also is Michelle McConaghy from the

7    U.S. Attorney's Office, but I'll be primarily handling the

8    call.

9        THE COURT:  Okay.  And are you familiar with the --

10   do you normally handle immigration matters?

11       MR. LARSON:  No, Your Honor.

12       MS. MCCONAGHY:  I do, Your Honor.  This is Michelle

13   McConaghy, and I'm here to assist him, if need be.

14       THE COURT:  Wonderful.  Okay.

15       And for the Plaintiffs (sic), who do we have?

16       MS. GILLMAN:  Good afternoon, Your Honor.  This is

17   Sarah Gillman from Rapid Defense Network.  And also on the

18   line is Diana Blank from New Haven Legal Assistance

19   Association.

20       THE COURT:  Okay.

21       MS. BLANK:  Good afternoon, Your Honor.

22       THE COURT:  Good afternoon.

23       Okay.  So I understand the significance of this

24   matter and the potential exigency of it.  I have questions

25   concerning venue, and I have questions concerning

Colloquy

1    jurisdiction, neither of which have been addressed by the

2    Plaintiffs.  But both of those need to be addressed in order

3    for this matter to move forward here in the District of

4    Connecticut.

5              So let's start with venue.  Now, the Petitioner is in

6    Louisiana, and the claim is that he's under the jurisdiction

7    and control of an individual in Massachusetts.  Why is venue

8    proper in Connecticut?

9              MS. GILLMAN:  Your Honor, this is Sarah Gillman.  So

10   to begin with, the habeas petition that we filed named two

11   petitioners.  One is our client, who is detained currently in

12   a jail in Louisiana by the Government.  And the other one is

13   his wife who had applied for and received an approved I-130 on

14   behalf of her husband.

15             In terms of the venue, we believe venue is

16   appropriate in this court when you apply traditional rules of

17   venue, because all the events underlying the petition happened

18   within the District of Connecticut, where both of the

19   Petitioners reside.

20             In terms of the Massachusetts --

21             THE COURT:  Okay.

22             MS. GILLMAN:  -- field office, that's --

23             THE COURT:  Look, I'm sorry.  I'm sorry.

24             MS. GILLMAN:  -- that's --

25             THE COURT:  I'm sorry.

Colloquy

1      MS. GILLMAN:  Yeah.

2      THE COURT:  Let's deal with one issue at a time.  Why

3    do traditional rules of venue apply here?  This is a matter

4    where there are specific venue rules.  Why do we ignore --

5      MS. GILLMAN:  So to begin --

6      THE COURT:  Why do we ignore the venue rules that say

7    that the petition should be filed in the place where the

8    petitioner is residing, where the petition is being housed?

9    Why did he file in New Jersey, originally?  Why not go back to

10   the Third Circuit if the Third Circuit said they didn't have

11   jurisdiction because there wasn't a final order and now a

12   final order is -- according to him -- about to be entered?

13     MS. GILLMAN:  So just to begin with, Your Honor, we

14   understand that the petition filed, and we understand that

15   your order was to make arguments regarding venue and

16   jurisdiction today.  We would say that, as to the request for

17   the temporary restraining order, just to maintain the status

18   quo, that our position is that Your Honor would have venue to

19   decide venue and jurisdiction -- decide jurisdiction, to allow

20   full briefing on all of these issues.  And that would be

21   consistent with the decision that was made in the Calderon

22   case that is cited in our papers, where there was an initial

23   grant of a TRO to allow the parties to then provide full

24   briefing on the venue and jurisdictional issues before the

25   court.

Colloquy

1          In our moving papers, we -- our position is that we

2     have met the standards for the entry of a temporary

3     restraining order at this point, because, under Second Circuit

4     case law, there is -- the standard that should be applied is

5     that there is sufficiently serious questions in regards to

6     merit to make them fair grounds for litigation.

7          The reason that we sought emergent relief last night

8     before Your Honor is because we understood that our client --

9     one of the Petitioners was being removed or moved.  As of

10    today, as we appear before Your Honor, we still don't have any

11    information about that.  And what we would ask, minimally,

12    today, before this Court, is that it enter a temporary

13    restraining order to allow the parties to fully brief these

14    issues.

15          THE COURT:  What -- okay.  Why do you believe he's

16    going to be removed today?

17          MS. GILLMAN:  As the procedural mystery of this case

18    indicates, Your Honor, our client was retained without any

19    type of notice or warning at his home that he was sharing with

20    his wife, the other petitioner in this case, and their

21    children.  And that was done by the Government without any

22    notice or warning in the State of Connecticut -- I'm sorry,

23    Your Honor -- in the State of Connecticut.  And that was done

24    by the field office of Immigration and Customs Enforcement

25    that covers Connecticut, which I understand is based in the

Colloquy

1    State of Massachusetts.

2            But as their petition also alleges, Your Honor, while

3    there was a stay in place from another court, the Petitioner

4    was brought to an airport in New Jersey, where the events that

5    he described in his declaration, that we annexed to the

6    petition, took place.  So we have very serious concerns about

7    the fact that our client is being moved again without any

8    prior notice.  And our minimal request for relief before this

9    Court is that the Court enter an order restraining the

10   Government from removing him or moving him while the parties

11   fully brief these issues.

12           THE COURT:  Why do you --

13           MR. LARSON:  And Your Honor, this John Larson.  I --

14           THE COURT:  I'm sorry, why do you believe he's being

15   deported today?

16           MS. GILLMAN:  He -- his -- we got a call from his

17   wife, who's the other Petitioner in this matter, and he said

18   that he was being moved.  And our understanding is the last

19   time this type of action was being done, he was being removed;

20   meaning he was being taken to the airport, and then the

21   Government was -- and their intention was to remove him.

22           THE COURT:  Did --

23           MS. GILLMAN:  But again, I -- these are --

24           THE COURT:  Um-hum.  Go ahead.

25           MS. GILLMAN:  So that's why we sent a letter to the

Colloquy

1    Court last night and then reached out to the Government

2    concerning this matter.

3            THE COURT:  Have you had prior discussions with the

4    Government concerning this matter?

5            MS. GILLMAN:  We have not, Your Honor.  We had filed

6    a letter with Your Honor on September 5th detailing our

7    efforts to -- or our -- detailing the fact that we had served

8    the moving papers on the Government.  And Your Honor did issue

9    an order directing the Government to respond to the request

10   for a temporary restraining order by September 27th.

11           THE COURT:  Okay.

12           MS. GILLMAN:  And then we filed the letter last night

13   via ECF just based upon the past history of this case and the

14   concern that he was being removed.

15           THE COURT:  Okay.  Mr. Larson, you were about to say

16   something.

17           MR. LARSON:  Yes, Your Honor.  I apologize.  I think,

18   at the outset, I may have misunderstood your initial question

19   about whether I had done some immigration proceedings before.

20   We had actually -- I have handled several of these kinds of

21   removal based stays in the past couple of years.  I think I

22   just misheard you.

23           And I just wanted to try to add a little bit of

24   information, understanding that Petitioners' counsel didn't

25   have all the information.  As Your Honor knows, and as

Colloquy

1    everybody knows, since the Petitioner, or Mr. Madjitov, is not

2    here, we had to -- we spent a lot of the -- this morning,

3    after -- in light of the filing last night, trying to gather

4    information from folks down in the New Orleans field office,

5    which is the one where he's being held.  We were able to

6    confirm this morning that removal is not imminent.  There was

7    a move of Mr. Madjitov, which I think maybe is what

8    precipitated this.  He was moved from Etowah Detention -- or

9    moved from Oakdale Detention Center in Louisiana to Etowah

10   Detention Center, which is in Alabama.  Those are both, again,

11   under the New Haven field office in terms of who's handling

12   that.

13        The other important information is that that's

14   considered longer term detention, so that's -- that was what

15   precipitated the move to Alabama.  He's not imminent for

16   removal, so in terms of that fear, that's not really, I guess,

17   on the table.

18        The other point I wanted to make, Your Honor -- and

19   just because there's a lot of moving pieces in terms of courts

20   that are involved in this and everything else.  I know Your

21   Honor mentioned that the -- I think there's a circuit petition

22   in -- back in June.  I don't even know if Petitioners' counsel

23   know this, but there was a -- there's also a prior pending

24   habeas brought by the same Petitioner, Mr. Madjitov, in the

25   Western District of Louisiana, that was filed on -- originally

Colloquy

1  filed on August 5.  I haven't seen the petition; I don't have

2  access to the petitioner through PACER or anything like that.

3          But there was on pending already when this one was

4  filed.  I don't know if it covered the same ground.  I would

5  assume it does, but I don't know that for sure.  And so that's

6  also pending in the district where he was held until

7  yesterday.

8          THE COURT:  I assume he didn't disclose that to you,

9  Attorney Blank?

10         MS. GILLMAN:  This is --

11         MS. BLANK:  Go ahead, Sarah.

12         THE COURT:  What --

13         MS. GILLMAN:  Oh, this is Sarah Gillman.  I can

14  answer that question, Your Honor.  Our understanding is that

15  Petitioner did file a pro se habeas in the Western District of

16  Louisiana; however, the claims in that habeas are distinct

17  from the claims in the habeas that is brought before this

18  Court.  I have not fully reviewed all of the papers in that

19  case.  I understand that he file a pro se habeas, but that

20  habeas is a -- what we would say is a core challenge to his

21  detention, whereas the arguments that are pending before Your

22  Honor present noncore challenges and are essentially

23  challenging a process that's being employed by the Government

24  to remove him from the United States.

25          Based on the representation of Government counsel,

Colloquy

1   Petitioners would ask that if this Court -- this Court

2   currently has an order in effect for the parties to -- for the

3   Government to respond by September 27th.  If the Government

4   would be amenable to entering into a stipulation with

5   Petitioners' counsel that there would not be any further

6   movement or removal of Petitioner pending full briefing before

7   this Court, that is certainly something that I think could

8   resolve the urgent request that we made last night without any

9   of the information just provided by Government counsel.

10          THE COURT:  Why should there be two habeas petitions

11  pending simultaneously?  Why would he not simply amend the

12  original one?

13          MS. GILLMAN:  The habeas petition that's before Your

14  Honor has two different Petitioners, and one of the

15  petitioners is his wife.  He actually filed the I-130

16  petitioner, and actually, this case tracks the decision by a

17  court in Virginia.  It's the Savey (ph.) case, which

18  specifically looked at the Government's authority to remove

19  someone while they're availing themselves to the provisional

20  waiver process.  It's an identical issue before this Court

21  and, therefore, would be proper for the Petitioner to be

22  before this Court on that particular challenge.

23          THE COURT:  You --

24          MS. GILLMAN:  There's also an additional challenge

25  that we --

Colloquy

1          THE COURT:  You didn't answer my question.  Why

2     should there be two?  Why shouldn't the original one be

3     amended?

4          MS. GILLMAN:  We don't believe that the petitions

5     that is in Louisiana is the proper venue to have these issues

6     litigated.  The events that led to the claims in this

7     particular petition and the legal claims that we're making

8     herein all occurred within the venue of the District of

9     Connecticut.

10          THE COURT:  Why do you think that --

11          MS. GILLMAN:  And also his --

12          THE COURT:  Why do you think that the locus of events

13     is the determining factor for venue in this type of

14     proceeding?

15          MS. GILLMAN:  Because you look at the location of the

16     parties, the convenience of the parties, and where all the

17     events took place.  And this particular case involved the two

18     Petitioners, both of whom are -- were living in Connecticut.

19     One of them still lives in Connecticut, and the entire history

20     of the case occurred within the District of Connecticut.

21          THE COURT:  This is a 2241 --

22          MS. MCCONAGHY:  Your Honor, this is Michelle --

23          THE COURT:  -- isn't it?  Isn't this a 2241?

24          MS. GILLMAN:  It is, Your Honor, and --

25          THE COURT:  And --

Colloquy

1          MS. GILLMAN:  -- and of course --

2          THE COURT:  And aren't there specific rules for venue

3     for filing a 2241?

4          MS. GILLMAN:  Well, as you look at the decision of

5     the court in Braden (ph.), we believe that venue is

6     appropriate in this district.

7          THE COURT:  What do you -- I'm -- what is -- what did

8     the statute say?

9          MS. GILLMAN:  I'm sorry, Your Honor, I couldn't hear

10    your question.  I'm sorry.

11         THE COURT:  Never mind.

12         Attorney McConaghy, you were about to say something?

13         MS. MCCONAGHY:  I just want to -- I apologize, Your

14    Honor.  I just wanted to clarify.  The Government doesn't

15    agree with their allegation that the wife has standing,

16    because she has no application pending.  So we take her out of

17    the equation here because she -- Darlece Faquere (ph.) is not

18    the wife.

19         And as far as locus of events, there are no events

20    that have happened in Connecticut, except for his detention on

21    a previous order of removal.  And from that point in time, he

22    was moved out of Connecticut.  A final removal had actually

23    came out of Florida, from my understanding, so these

24    immigration proceedings did not happen in the State of

25    Connecticut.

Colloquy

1          THE COURT:  All right.  There's no urgency here that

2     would require a stay.  There's been no showing of any

3     irreparable harm.  There's been no showing of the issuance of

4     an order of removal or showing of an imminent removal from the

5     country.  The Petitioner has demonstrated that he has been

6     relocated or thought he was going to be relocating.  He indeed

7     has been relocated.  He's been relocated within the United

8     States to a long-term immigration facility.  And so the Court

9     declines to enter a stay.

10          However, the questions of venue and jurisdiction need

11     to be briefed, timely.  And my question for the parties is how

12     you propose to proceed.  Does the Government want to respond

13     to that first and afford the Petitioner an opportunity to

14     reply?

15          MR. LARSON:  Your Honor, this is John Larson.  In

16     light of the order to show cause, that was how we had intended

17     to proceed.  We were -- I mean, I don't think it'll come as a

18     surprise to anybody on the call that the venue and

19     jurisdictional issues were certainly going to be sort of

20     threshold issues that we addressed in our filing.  If that's

21     something that the Court would want from us, that was going to

22     sort of be sort of the introduction to what we had filed, or

23     if the Court would prefer to hear that from the Petitioners

24     first, that's obviously fine with the Government, too.

25          I know -- when I was working on the response to the

Colloquy

1    petition, I believe, I recall, says something like there's

2    nothing prohibiting the venue from being here, but I'm not

3    sure that there's really much of an affirmative showing that

4    the venue should be here, given that neither of the

5    Petitioner -- neither the main Petitioner -- I'll call him --

6    nor the immigration proceedings are Connecticut based.  I

7    haven't ever dealt with a situation where neither the

8    petitioner nor the proceedings were here that we heard the

9    habeas in Connecticut.  But if that's something that the Court

10   would prefer the Petitioners to address more affirmatively

11   first, the Government's obviously happy with that also.

12        THE COURT:  I think the -- well, attorneys -- the

13   Petitioners can respond for themselves.  But I think, from

14   what I've heard today, they believe they have responded.  I

15   believe they think they have established venue and

16   jurisdiction here in their papers.  So my inclination would be

17   to have the Government show cause.  And to the extent that a

18   reply is warranted under the rules, then the Petitioner would

19   be able to reply to the Government's memorandum of law.

20        How soon can the Government file?

21        MS. GILLMAN:  Your Honor, this is Petitioners'

22   counsel.  We would be happy to further brief the arguments

23   that are in our petition and in our memorandum of law.  We

24   were simply asking for a temporary stay to be able to fully

25   brief all these issues so we are able to provide supplemental

Colloquy

1    briefing as to venue and jurisdiction.

2              THE COURT:  By when?

3              MS. GILLMAN:  We are -- whatever is most convenient

4    for the Court, we're able to respond to.  If the Government's

5    counsel is representing that imminent removal -- or that

6    removal is not imminent, it sounds as if there is no removal

7    date at this time, we would be happy to work out a schedule

8    that's amenable to both parties.

9              THE COURT:  All right.  Can you file your papers --

10             MS. MCCONAGHY:  Your Honor, if I may, this is

11   Michelle McConaghy.

12             THE COURT:  Yes.

13             MS. MCCONAGHY:  I think that the best course of

14   action is for us to respond to the (indiscernible) clause,

15   which would address both the jurisdictional issue and actually

16   reach the merits, because that's what we intended to do to

17   begin with.  If the Court feels that the jurisdictional issue

18   answers the question and doesn't reach the merits, that's

19   fine.  And then they can have the opportunity to reply to

20   that.

21             I think we know what their arguments are going to be,

22   as it's been alluded to in their filing.  We disagree,

23   obviously, and that's why we propose to respond and then have

24   them reply, if need be.  And I think that would be the

25   quickest course of action.

Colloquy

1          THE COURT:  I agree.  I think that's the quickest

2    course of action, and that's the standard course of action.

3    And we should follow suit with that.  The Government should

4    respond to the petition in accordance with the order to show

5    cause.  And then, if appropriate, the Petitioner should have

6    an opportunity to reply to that.  So that's how we'll proceed.

7          And how soon can the Government file?

8          MR. LARSON:  Your Honor, the original show cause date

9    was the 27th.  I think that's fine given the lack of any

10   removal.  But if the Court wants to advance that, if we want

11   to move that up a week or something like that, I'm sure we can

12   make that happen, too.

13         THE COURT:  I think that's fine.  The 27th is

14   certainly within the contemplation that I had, and --

15         MR. LARSON:  Okay.

16         THE COURT:  -- then if the Petitioner wanted to

17   respond, I would afford an additional fourteen days.

18         MS. GILLMAN:  I'm sorry, Your Honor, fourteen days?

19         THE COURT:  Yes, fourteen.

20         MS. GILLMAN:  Fourteen?

21         THE COURT:  Yes, 1-4.

22         MS. GILLMAN:  Thank you.  Sorry.  The connection is a

23   little difficult.

24         THE COURT:  I know.

25         All righty?

Colloquy

1        MS. GILLMAN:  And Your Honor, if I can just make one

2    more representation to the Court, because it was in our

3    original moving papers, one of the requests that we made in

4    the request for a TRO is that Petitioners' counsel would be

5    given notice prior to any movement of the Petitioner.  So last

6    night, we did not have any notice that he was being moved.

7    And the conclusion that we reached was, based on the history

8    of the case, was that he was being removed, which

9    precipitate -- which caused us to contact the Court, urgently.

10        If Government could agree to provide us with forty-

11    eight-hours' notice anytime that Petitioner is going to be

12    moved during the pendency of these proceedings, we believe

13    that wouldn't be inappropriate to ask and be -- I think, save

14    time for all the parties involved here.

15        THE COURT:  What --

16        MS. MCCONAGHY:  Your Honor, this is Michelle

17    McConaghy for the Government.  That's something we cannot do.

18    They don't even tell us when they're going to move him.  I

19    have asked that we be notified prior to any intent to remove

20    him, and we can certainly advise the Court if we get word that

21    he's being removed.  But if he's being moved within the

22    country, that's something they won't even tell us.

23        THE COURT:  Yeah, I don't think that's a reasonable

24    expectation that they're going to provide prior notice of

25    prisoner movement.  There are just too many people being moved

Colloquy

1    to too many places too frequently to have that imposition.   I

2    don't even think I have jurisdiction to do that.   That's an

3    executive branch administrative decision.

4              But certainly, with respect to removal, I would

5    imagine that there is a procedure -- I would imagine --

6              MS. GILLMAN:   I'm sorry, Your Honor, I couldn't --

7              THE COURT:   With respect to removal, I imagine there

8    is a procedure, and I imagine there would be sufficient

9    opportunity for notice to be given.   The Government has

10   represented that it's asked for that prior notice, and that

11   will suffice.

12             Okay?   If we can --

13             MS. GILLMAN:   But Your Honor --

14             THE COURT:   Yes.

15             MS. GILLMAN:   -- just -- I'm sorry, there was an

16   interruption in the phone line.   Just so I understood what

17   Your Honor said.   You said that, for removal, there -- you

18   imagine there is a procedure in place and that notice would be

19   given.   Our experience is that no notice is given prior to

20   removal, but if the Government attorneys, as officers of the

21   Court, are representing removal is neither imminent nor

22   scheduled and that, given the pending litigation, there can be

23   some notice to Petitioners' counsel, we would ask that, just

24   given the history of this case.

25             THE COURT:   It --

Colloquy

1      MS. MCCONAGHY:  We would give it to the Court and not

2  to Petitioners' counsel.  And I apologize; this is Michelle

3  McConaghy.

4      THE COURT:  That's what I understood the Government

5  was saying, and that will suffice.

6      MS. GILLMAN:  And I'm sorry, Your Honor, again, my

7  line broke up.  I did not hear what Respondents' counsel said.

8      THE COURT:  She said she would give the assurance to

9  the Court, which is what I understood --

10      MS. GILLMAN:  Okay.

11      THE COURT:  -- the Government had originally said,

12  and that will suffice to give the Petitioner sufficient time

13  to move for an emergency stay, should a removal order enter.

14      MS. GILLMAN:  Thank you, Your Honor.

15      THE COURT:  You're welcome.

16      All righty.  I think that resolves all the immediate

17  issues.  I look forward to your briefs.

18      MS. GILLMAN:  Thank you, Your Honor.

19      MR. LARSON:  Thank you, Your Honor.

20      THE COURT:  You're welcome.

21      MS. MCCONAGHY:  Bye-bye.

22      THE COURT:  Okay.

23      (Whereupon the above matter was concluded at 12:28

24  o'clock, p.m.)

25

1                    C E R T I F I C A T I O N

2

3          I, Aliza Blumenfeld, Official Court Transcriber for

4    the United States District Court for the District of

5    Connecticut, do hereby certify that the foregoing pages are a

6    true and accurate transcription of the proceedings in the

7    aforementioned matter to the best of my skill and ability.

8

9

10   Date: October 25, 2019

11

12

13

14   _____

15               ALIZA BLUMENFELD, CET-634

16               eScribers, LLC
             352 Seventh Avenue, Ste. #604
17               New York, NY 10001
                 (973)406-2250
18           operations@escribers.net

19

20

21

22

23

24

25

## A

**able (5)**
9:5;15:19,24,25;16:4
**above (1)**
20:23
**access (1)**
10:2
**accordance (1)**
17:4
**according (1)**
5:12
**action (5)**
7:19;16:14,25;17:2,2
**actually (5)**
8:20;11:15,16;13:22;
16:15
**add (1)**
8:23
**additional (2)**
11:24;17:17
**address (2)**
15:10;16:15
**addressed (3)**
4:1,2;14:20
**administrative (1)**
19:3
**advance (1)**
17:10
**advise (1)**
18:20
**affirmative (1)**
15:3
**affirmatively (1)**
15:10
**afford (2)**
14:13;17:17
**afternoon (5)**
3:3,4,16,21,22
**again (4)**
7:7,23;9:10;20:6
**agree (3)**
13:15;17:1;18:10
**ahead (2)**
7:24;10:11
**airport (2)**
7:4,20
**Alabama (2)**
9:10,15
**allegation (1)**
13:15
**alleges (1)**
7:2
**allow (3)**
5:19,23;6:13
**alluded (1)**
16:22
**amenable (2)**
11:4;16:8
**amend (1)**
11:11
**amended (1)**

12:3
**annexed (1)**
7:5
**apologize (3)**
8:17;13:13;20:2
**appear (1)**
6:10
**application (1)**
13:16
**applied (2)**
4:13;6:4
**apply (2)**
4:16;5:3
**appropriate (3)**
4:16;13:6;17:5
**approved (1)**
4:13
**arguments (4)**
5:15;10:21;15:22;
16:21
**assist (1)**
3:13
**Assistance (1)**
3:18
**Association (1)**
3:19
**assume (2)**
10:5,8
**assurance (1)**
20:8
**Attorney (2)**
10:9;13:12
**attorneys (2)**
15:12;19:20
**Attorney's (2)**
3:5,7
**August (1)**
10:1
**authority (1)**
11:18
**availing (1)**
11:19

## B

**back (2)**
5:9;9:22
**based (6)**
6:25;8:13,21;10:25;
15:6;18:7
**begin (4)**
4:10;5:5,13;16:17
**behalf (2)**
3:5;4:14
**best (1)**
16:13
**bit (1)**
8:23
**Blank (4)**
3:18,21;10:9,11
**both (6)**
4:2,18;9:10;12:18;
16:8,15

**Braden (1)**
13:5
**branch (1)**
19:3
**brief (4)**
6:13;7:11;15:22,25
**briefed (1)**
14:11
**briefing (4)**
5:20,24;11:6;16:1
**briefs (1)**
20:17
**broke (1)**
20:7
**brought (3)**
7:4;9:24;10:17
**Bye-bye (1)**
20:21

## C

**Calderon (1)**
5:21
**call (4)**
3:8;7:16;14:18;15:5
**came (1)**
13:23
**can (11)**
10:13;15:13,20;16:9,
19;17:7,11;18:1,20;
19:12,22
**case (12)**
5:22;6:4,17,20;8:13;
10:19;11:16,17;12:17,
20;18:8;19:24
**cause (4)**
14:16;15:17;17:5,8
**caused (1)**
18:9
**Center (2)**
9:9,10
**certainly (5)**
11:7;14:19;17:14;
18:20;19:4
**challenge (3)**
10:20;11:22,24
**challenges (1)**
10:22
**challenging (1)**
10:23
**children (1)**
6:21
**Circuit (4)**
5:10,10;6:3;9:21
**cited (1)**
5:22
**claim (1)**
4:6
**claims (4)**
10:16,17;12:6,7
**clarify (1)**
13:14
**clause (1)**

16:14
**client (4)**
4:11;6:8,18;7:7
**concern (1)**
8:14
**concerning (4)**
3:25,25;8:2,4
**concerns (1)**
7:6
**concluded (1)**
20:23
**conclusion (1)**
18:7
**confirm (1)**
9:6
**Connecticut (15)**
4:4,8,18;6:22,23,25;
12:9,18,19,20;13:20,
22,25;15:6,9
**connection (1)**
17:22
**considered (1)**
9:14
**consistent (1)**
5:21
**contact (1)**
18:9
**contemplation (1)**
17:14
**control (1)**
4:7
**convenience (1)**
12:16
**convenient (1)**
16:3
**core (1)**
10:20
**counsel (11)**
8:24;9:22;10:25;
11:5,9;15:22;16:5;
18:4;19:23;20:2,7
**country (2)**
14:5;18:22
**couple (1)**
8:21
**course (5)**
13:1;16:13,25;17:2,2
**COURT (81)**
3:2,9,14,20,22;4:16,
21,23,25;5:2,6,25;6:12,
15;7:3,9,9,12,14,22,24;
8:1,3,11,15;10:8,12,18;
11:1,1,7,10,17,20,22,
23;12:1,10,12,21,23,
25;13:2,5,7,11;14:1,8,
21,23,15;19,22;16:2,4,9,
12,17;17:1,10,13,16,
19,21,24;18:2,9,15,20,
23;19:7,14,21,25;20:1,
4,8,9,11,15,20,22
**courts (1)**
9:19
**covered (1)**

10:4
**covers (1)**
6:25
**currently (2)**
4:11;11:2
**Customs (1)**
6:24

## D

**Darlece (1)**
13:17
**date (2)**
16:7;17:8
**days (2)**
17:17,18
**deal (1)**
5:2
**dealt (1)**
15:7
**decide (2)**
5:19,19
**decision (4)**
5:21;11:16;13:4;
19:3
**declaration (1)**
7:5
**declines (1)**
14:9
**Defense (1)**
3:17
**demonstrated (1)**
14:5
**deported (1)**
7:15
**described (1)**
7:5
**detailing (2)**
8:6,7
**detained (1)**
4:11
**Detention (6)**
9:8,9,10,14;10:21;
13:20
**determining (1)**
12:13
**Diana (1)**
3:18
**different (1)**
11:14
**difficult (1)**
17:23
**directing (1)**
8:9
**disagree (1)**
16:22
**disclose (1)**
10:8
**discussions (1)**
8:3
**distinct (1)**
10:16
**District (8)**

MADINA S. MAMADJONOVA, et al. v.
WILLIAM BARR, et al.

September 11, 2019

4:3,18;9:25;10:6,15;
12:8,20;13:6
**done (4)**
6:21,23;7:19;8:19
**down (1)**
9:4
**during (1)**
18:12

**E**

**ECF (1)**
8:13
**effect (1)**
11:2
**efforts (1)**
8:7
**eight-hours' (1)**
18:11
**else (1)**
9:20
**emergency (1)**
20:13
**emergent (1)**
6:7
**employed (1)**
10:23
**Enforcement (1)**
6:24
**enter (4)**
6:12;7:9;14:9;20:13
**entered (1)**
5:12
**entering (1)**
11:4
**entire (1)**
12:19
**entry (1)**
6:2
**equation (1)**
13:17
**essentially (1)**
10:22
**established (1)**
15:15
**Etowah (2)**
9:8,9
**even (4)**
9:22;18:18,22;19:2
**events (7)**
4:17;7:4;12:6,12,17;
13:19,19
**everybody (1)**
9:1
**except (1)**
13:20
**executive (1)**
19:3
**exigency (1)**
3:24
**expectation (1)**
18:24
**experience (1)**

19:19
**extent (1)**
15:17

**F**

**facility (1)**
14:8
**fact (2)**
7:7;8:7
**factor (1)**
12:13
**fair (1)**
6:6
**familiar (1)**
3:9
**Faquere (1)**
13:17
**far (1)**
13:19
**fear (1)**
9:16
**feels (1)**
16:17
**field (4)**
4:22;6:24;9:4,11
**file (6)**
5:9;10:15,19;15:20;
16:9;17:7
**filed (10)**
4:10;5:7,14;8:5,12;
9:25;10:1,4;11:15;
14:22
**filing (4)**
9:3;13:3;14:20;
16:22
**final (3)**
5:11,12;13:22
**fine (4)**
14:24;16:19;17:9,13
**first (3)**
14:13,24;15:11
**Florida (1)**
13:23
**folks (1)**
9:4
**follow (1)**
17:3
**forty- (1)**
18:10
**forward (1)**
4:3;20:17
**fourteen (4)**
17:17,18,19,20
**frequently (1)**
19:1
**full (3)**
5:20,23;11:6
**fully (4)**
6:13;7:11;10:18;
15:24
**further (2)**
11:5;15:22

**G**

**gather (1)**
9:3
**GILLMAN (40)**
3:16,17;4:9,9,22,24;
5:1,5,13;6:17;7:16,23,
25;8:5,12;10:10,13,13;
11:13,24;12:4,11,15,
24;13:1,4,9;15:21;
16:3;17:18,20,22;18:1;
19:6,13,15;20:6,10,14,
18
**given (8)**
15:4;17:9;18:5;19:9,
19,19,22,24
**Good (4)**
3:4,16,21,22
**Government (27)**
3:2;4:12;6:21;7:10,
21;8:1,4,8,9;10:23,25;
11:3,3,9;13:14;14:12,
24;15:17,20;17:3,7;
18:10,17;19:9,20;20:4,
11
**Government's (4)**
11:18;15:11,19;16:4
**grant (1)**
5:23
**ground (1)**
10:4
**grounds (1)**
6:6
**guess (1)**
9:16

**H**

**habeas (10)**
4:10;9:24;10:15,16,
17,19,20;11:10,13;15:9
**handle (1)**
3:10
**handled (1)**
8:20
**handling (2)**
3:7;9:11
**happen (2)**
13:24;17:12
**happened (2)**
4:17;13:20
**happy (3)**
15:11,22;16:7
**harm (1)**
14:3
**Haven (2)**
3:18;9:11
**hear (2)**
13:9;14:23;20:7
**heard (2)**
15:8,14
**held (2)**

9:5;10:6
**herein (1)**
12:8
**history (4)**
8:13;12:19;18:7;
19:24
**home (1)**
6:19
**Honor (42)**
3:4,11,12,16,21;4:9;
5:13,18;6:8,10,18,23;
7:2,13;8:5,6,8,17,25;
9:18,21;10:14,22;
11:14;12:12,24,24;13:9,
14;14:14,15;15:21;16:10;
17:8,18;18:1,16;19:6,
13,17;20:6,14,18,19
**housed (1)**
5:8
**husband (1)**
4:14

**I**

**I-130 (2)**
4:13;11:15
**identical (1)**
11:20
**ignore (2)**
5:4,6
**imagine (5)**
19:5,5,7,8,18
**immediate (1)**
20:16
**immigration (6)**
3:10;6:24;8:19;
13:24;14:8;15:6
**imminent (6)**
9:6,15;14:4;16:5,6;
19:21
**important (1)**
9:13
**imposition (1)**
19:1
**inappropriate (1)**
18:13
**inclination (1)**
15:16
**indeed (1)**
14:6
**indicates (1)**
6:18
**indiscernible (1)**
16:14
**individual (1)**
4:7
**information (6)**
6:11;8:24,25;9:4,13;
11:9
**initial (2)**
5:22;8:18
**intended (2)**
14:16;16:16

**intent (1)**
18:19
**intention (1)**
7:21
**interruption (1)**
19:16
**into (1)**
11:4
**introduction (1)**
14:22
**involved (3)**
9:20;12:17;18:14
**irreparable (1)**
14:3
**issuance (1)**
14:3
**issue (5)**
5:2;8:8;11:20;16:15,
17
**issues (9)**
5:20,24;6:14;7:11;
12:5;14:19,20;15:25;
20:17

**J**

**jail (1)**
4:12
**Jersey (2)**
5:9;7:4
**John (3)**
3:4;7:13;14:15
**June (1)**
9:22
**jurisdiction (10)**
4:1,6;5:11,16,19,19;
14:10;15:16;16:1;19:2
**jurisdictional (4)**
5:24;14:19;16:15,17

**K**

**kinds (1)**
8:20
**knows (2)**
8:25;9:1

**L**

**lack (1)**
17:9
**LARSON (12)**
3:4,5,11;7:13,13;
8:15,17;14:15,15;17:8,
15;20:19
**last (7)**
6:7;7:18;8:1,12;9:3;
11:8;18:5
**law (3)**
6:4;15:19,23
**led (1)**
12:6
**Legal (2)**

3:18;12:7
**letter (3)**
7:25;8:6,12
**light (2)**
9:3;14:16
**line (4)**
3:6,18;19:16;20:7
**litigated (1)**
12:6
**litigation (2)**
6:6;19:22
**little (2)**
8:23;17:23
**lives (1)**
12:19
**living (1)**
12:18
**location (1)**
12:15
**locus (2)**
12:12;13:19
**longer (1)**
9:14
**long-term (1)**
14:8
**Look (4)**
4:23;12:15;13:4;
20:17
**looked (1)**
11:18
**lot (2)**
9:2,19
**Louisiana (6)**
4:6,12;9:9,25;10:16;
12:5

**M**

**Madjitov (3)**
9:1,7,24
**main (1)**
15:5
**maintain (1)**
5:17
**making (1)**
12:7
**many (2)**
18:25;19:1
**Massachusetts (3)**
4:7,20;7:1
**matter (7)**
3:24;4:3;5:3;7:17;
8:2,4;20:23
**matters (1)**
3:10
**may (2)**
8:18;16:10
**maybe (1)**
9:7
**McConaghy (14)**
3:6,12,13;12:22;
13:12,13;16:10,11,13;
18:16,17;20:1,3,21

**mean (1)**
14:17
**meaning (1)**
7:20
**memorandum (2)**
15:19,23
**mentioned (1)**
9:21
**merit (1)**
6:6
**merits (2)**
16:16,18
**met (1)**
6:2
**Michelle (6)**
3:6,12;12:22;16:11;
18:16;20:2
**mind (1)**
13:11
**minimal (1)**
7:8
**minimally (1)**
6:11
**misheard (1)**
8:22
**misunderstood (1)**
8:18
**more (2)**
15:10;18:2
**morning (2)**
9:2,6
**most (1)**
16:3
**move (6)**
4:3;9:7,15;17:11;
18:18;20:13
**moved (10)**
6:9;7:7,18;9:8,9;
13:22;18:6,12,21,25
**movement (3)**
11:6;18:5,25
**moving (5)**
6:1;7:10;8:8;9:19;
18:3
**much (1)**
15:3
**mystery (1)**
6:17

**N**

**named (1)**
4:10
**need (4)**
3:13;4:2;14:10;
16:24
**neither (5)**
4:1;15:4,5,7;19:21
**Network (1)**
3:17
**New (5)**
3:18;5:9;7:4;9:4,11
**night (6)**

6:7;8:1,12;9:3;11:8;
18:6
**noncore (1)**
10:22
**nor (3)**
15:6,8;19:21
**normally (1)**
3:10
**notice (12)**
6:19,22;7:8;18:5,6,
11,24;19:9,10,18,19,23
**notified (1)**
18:19

**O**

**Oakdale (1)**
9:9
**obviously (3)**
14:24;15:11;16:23
**occurred (2)**
12:8,20
**O'CLOCK (2)**
3:1;20:24
**Office (6)**
3:5,7;4:22;6:24;9:4,
11
**officers (1)**
19:20
**One (12)**
4:11,12;5:2;6:9;9:5;
10:3;11:12,14;12:2,19;
18:1,3
**opportunity (4)**
14:13;16:19;17:6;
19:9
**order (16)**
4:2;5:11,12,15,17;
6:3,13;7:9;8:9,10;11:2;
13:21;14:4,16;17:4;
20:13
**original (4)**
11:12;12:2;17:8;
18:3
**originally (3)**
5:9;9:25;20:11
**Orleans (1)**
9:4
**out (5)**
8:1;13:16,22,23;16:7
**outset (1)**
8:18

**P**

**PACER (1)**
10:2
**papers (7)**
5:22;6:1;8:8;10:18;
15:16;16:9;18:3
**particular (3)**
11:22;12:7,17
**parties (9)**

5:23;6:13;7:10;11:2;
12:16,16;14:11;16:8;
18:14
**past (2)**
8:13,21
**pendency (1)**
18:12
**pending (8)**
9:23;10:3,6,21;11:6,
11;13:16;19:22
**people (1)**
18:25
**petition (14)**
4:10,17;5:7,8,14;7:2,
6;9:21;10:1;11:13;
12:7;15:1,23;17:4
**Petitioner (23)**
4:5;5:8;6:20;7:3,17;
9:1,24;10:2,15;11:6,16,
21;14:5,13;15:5,5,8,18;
17:5,16;18:5,11;20:12
**petitioners (10)**
4:11,19;6:9;11:1,14,
15;12:18;14:23;15:10,
13
**Petitioners' (7)**
8:24;9:22;11:5;
15:21;18:4;19:23;20:2
**petitions (2)**
11:10;12:4
**ph (3)**
11:17;13:5,17
**phone (1)**
19:16
**pieces (1)**
9:19
**place (5)**
5:7;7:3,6;12:17;
19:18
**places (1)**
19:1
**Plaintiffs (2)**
3:15;4:2
**PM (2)**
3:1;20:24
**point (3)**
6:3;9:18;13:21
**position (2)**
5:18;6:1
**potential (1)**
3:24
**precipitate (1)**
18:9
**precipitated (2)**
9:8,15
**prefer (2)**
14:23;15:10
**present (1)**
10:22
**previous (1)**
13:21
**primarily (1)**
3:7

**prior (8)**
7:8;8:3;9:23;18:5,19,
24;19:10,19
**prisoner (1)**
18:25
**pro (2)**
10:15,19
**procedural (1)**
6:17
**procedure (3)**
19:5,8,18
**proceed (3)**
14:12,17;17:6
**proceeding (1)**
12:14
**proceedings (5)**
8:19;13:24;15:6,8;
18:12
**process (2)**
10:23;11:20
**prohibiting (1)**
15:2
**proper (3)**
4:8;11:21;12:5
**propose (2)**
14:12;16:23
**provide (4)**
5:23;15:25;18:10,24
**provided (1)**
11:9
**provisional (1)**
11:19

**Q**

**quickest (2)**
16:25;17:1
**quo (1)**
5:18

**R**

**Rapid (1)**
3:17
**reach (2)**
16:16,18
**reached (2)**
8:1;18:7
**really (2)**
9:16;15:3
**reason (1)**
6:7
**reasonable (1)**
18:23
**recall (1)**
15:1
**received (1)**
4:13
**regarding (1)**
5:15
**regards (1)**
6:5
**relief (2)**

MADINA S. MAMADJONOVA, et al. v.
WILLIAM BARR, et al.

September 11, 2019

6:7;7:8
**relocated (3)**
14:6,7,7
**relocating (1)**
14:6
**removal (18)**
8:21;9:6,16;11:6;
13:21,22;14:4,4;16:5,6,
6;17:10;19:4,7,17,20,
21;20:13
**remove (4)**
7:21;10:24;11:18;
18:19
**removed (6)**
6:9,16;7:19;8:14;
18:8,21
**removing (1)**
7:10
**reply (6)**
14:14;15:18,19;
16:19,24;17:6
**representation (2)**
10:25;18:2
**represented (1)**
19:10
**representing (3)**
3:2;16:5;19:21
**request (5)**
5:16;7:8;8:9;11:8;
18:4
**requests (1)**
18:3
**require (1)**
14:2
**reside (1)**
4:19
**residing (1)**
5:8
**resolve (1)**
11:8
**resolves (1)**
20:16
**respect (2)**
19:4,7
**respond (9)**
8:9;11:3;14:12;
15:13;16:4,14,23;17:4,
17
**responded (1)**
15:14
**Respondents (1)**
3:6
**Respondents' (1)**
20:7
**response (1)**
14:25
**restraining (5)**
5:17;6:3,13;7:9;8:10
**retained (1)**
6:18
**reviewed (1)**
10:18
**right (2)**

14:1;16:9
**righty (2)**
17:25;20:16
**rules (6)**
4:16;5:3,4,6;13:2;
15:18

**S**

**same (2)**
9:24;10:4
**Sarah (4)**
3:17;4:9;10:11,13
**save (1)**
18:13
**Savey (1)**
11:17
**saying (1)**
20:5
**schedule (1)**
16:7
**scheduled (1)**
19:22
**se (2)**
10:15,19
**Second (1)**
6:3
**sent (1)**
7:25
**September (3)**
8:6,10;11:3
**serious (2)**
6:5;7:6
**served (1)**
8:7
**several (1)**
8:20
**sharing (1)**
6:19
**show (4)**
14:16;15:17;17:4,8
**showing (4)**
14:2,3,4;15:3
**sic (1)**
3:15
**significance (1)**
3:23
**simply (2)**
11:11;15:24
**simultaneously (1)**
11:11
**situation (1)**
15:7
**someone (1)**
11:19
**soon (2)**
15:20;17:7
**sorry (12)**
4:23,23,25;6:22;
7:14;13:9,10;17:18,22;
19:6,15;20:6
**sort (3)**
14:19,22,22

**sought (1)**
6:7
**sounds (1)**
16:6
**specific (2)**
5:4;13:2
**specifically (1)**
11:18
**spent (1)**
9:2
**standard (2)**
6:4;17:2
**standards (1)**
6:2
**standing (1)**
13:15
**start (1)**
4:5
**State (4)**
6:22,23;7:1;13:24
**States (2)**
10:24;14:8
**status (1)**
5:17
**statute (1)**
13:8
**stay (5)**
7:3;14:2,9;15:24;
20:13
**stays (1)**
8:21
**still (2)**
6:10;12:19
**stipulation (1)**
11:4
**suffice (3)**
19:11;20:5,12
**sufficient (2)**
19:8;20:12
**sufficiently (1)**
6:5
**suit (1)**
17:3
**supplemental (1)**
15:25
**sure (3)**
10:5;15:3;17:11
**surprise (1)**
14:18

**T**

**table (1)**
9:17
**temporary (5)**
5:17;6:2,12;8:10;
15:24
**term (1)**
9:14
**terms (5)**
4:15,20;9:11,16,19
**therefore (1)**
11:21

**Third (2)**
5:10,10
**thought (1)**
14:6
**threshold (1)**
14:20
**timely (1)**
14:11
**today (6)**
5:16;6:10,12,16;
7:15;15:14
**took (2)**
7:6;12:17
**tracks (1)**
11:16
**traditional (2)**
4:16;5:3
**TRO (2)**
5:23;18:4
**try (1)**
8:23
**trying (1)**
9:3
**two (5)**
4:10;11:10,14;12:2,
17
**type (3)**
6:19;7:19;12:13

**U**

**Um-hum (1)**
7:24
**under (4)**
4:6;6:3;9:11;15:18
**underlying (1)**
4:17
**understood (4)**
6:8;19:16;20:4,9
**United (1)**
10:24;14:7
**up (2)**
17:11;20:7
**upon (1)**
8:13
**urgency (1)**
14:1
**urgent (1)**
11:8
**urgently (1)**
18:9

**V**

**venue (24)**
3:25;4:5,7,15,15,17;
5:3,4,6,15,18,19,24;
12:5,8,13;13:2,5;14:10,
18;15:2,4,15;16:1
**via (1)**
8:13
**Virginia (1)**
11:17

**W**

**waiver (1)**
11:20
**wants (1)**
17:10
**warning (2)**
6:19,22
**warranted (1)**
15:18
**week (1)**
17:11
**welcome (2)**
20:15,20
**Western (2)**
9:25;10:15
**whereas (1)**
10:21
**Whereupon (1)**
20:23
**Who's (3)**
3:2;7:17;9:11
**wife (6)**
4:13;6:20;7:17;
11:15;13:15,18
**within (6)**
4:18;12:8,20;14:7;
17:14;18:21
**without (4)**
6:18,21;7:7;11:8
**Wonderful (1)**
3:14
**word (1)**
18:20
**work (1)**
16:7
**working (1)**
14:25

**Y**

**years (1)**
8:21
**yesterday (1)**
10:7

**1**

**12:03 (1)**
3:1
**1-4 (1)**
17:21

**2**

**2241 (3)**
12:21,23;13:3
**27th (4)**
8:10;11:3;17:9,13

**5**

MADINA S. MAMADJONOVA, et al. v.
WILLIAM BARR, et al.

September 11, 2019

**5 (1)**
   10:1
**5th (1)**
   8:6