# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MADINA S. MAMADJONOVA and** | : | |
| **BAKHODIR S. MADJITOV** | : | |
| *Petitioners*, | : | **CIVIL CASE NUMBER** |
| | : | |
| | : | **9-cv-01317 (VLB)** |
| **v.** | : | |
| | : | **NOVEMBER 20, 2019** |
| **WILLIAM BARR, et al.** | : | |
| *Respondents.* | : | |

### MEMORANDUM OF DECISION DENYING MOTION FOR TEMPORARY RESTRAINING ORDER [ECF NO. 2] AND DISMISSING AMENDED MOTION FOR RELIEF UNDER 28 U.S.C. § 2241 [ECF NO. 22]

Petitioners Madina S. Mamadjonova and Bakhodir S. Madjitov (collectively "Petitioners") bring this motion for temporary restraining order ("TRO") and petition for habeas relief under 28 U.S.C. § 2241, asserting that despite Petitioner Madjitov being subject to a final order of removal from the United States, he has a constitutional due process right to complete the "provisional unlawful presence waiver of inadmissibility" process, which might allow him to remain in the United States. [ECF Nos. 2, 22].[1]

For the following reasons, the Petitioners' Motion for TRO and petition for habeas relief are DENIED.

---

[1] The Petitioners also assert claims to relief pursuant to the All Writs Act, 28 U.S.C. § 1651, the Immigration and Nationality Act ("INA") and regulations thereunder, the Administrative Procedure Act ("APA"), Article 1, Section 9, Clause 2 of the United States Constitution (the "Suspension Clause"), and the Fourth And Fifth Amendments to the United States Constitution. [ECF No. 22 at 1].

## Background

On March 12, 2006, Mr. Madjitov, a native of Uzbekistan, properly entered the United States pursuant to a P-3 Visa. [ECF No. 23-1 at 3]. Mr. Madjitov's stay expired on or around July 20, 2006, but he remained in the United States beyond his authorized stay. *Id.* On December 12, 2006, Mr. Madjitov filed for asylum, which was denied by an immigration judge on August 31, 2011. *Id.*[2] Because the transcript of the immigration judge's ("IJ") hearing was incomplete, the Board of Immigration Appeals ("BIA" or "Board") remanded the case to the IJ to prepare a complete transcript for the Board's review. AR775.

The IJ did so and denied Mr. Madjitov's petition for asylum a second time on May 17, 2013, issuing a final order of removal. [ECF No. 23-1 at 4]. In his Decision, the IJ made an adverse credibility assessment of Mr. Madjitov, finding his testimony and written submissions contradictory, and several of his explanations regarding his departure from Uzbekistan not credible. AR683-708. Petitioner Madjitov appealed, and on July 24, 2014 the BIA affirmed the IJ's findings that there were "numerous inconsistencies between the respondent's testimony, his asylum applications, his asylum interview with the Department of Homeland Security ("DHS"), and the evidence of record." AR588-90. The BIA also denied a follow-on motion for reconsideration on October 31, 2014. [ECF No. 23-1 at 4].

---

[2] *Madjitov v. Attorney General*, No. 19-2327, Administrative Record ("AR") at 796 (3d Cir. June 27, 2019). The complete record on Petitioner Madjitov's immigration proceedings are contained in an administrative record filed on June 27, 2019, in an appeal Mr. Madjitov filed with the Third Circuit, discussed *infra*. All of Petitioner Madjitov's immigration proceedings occurred in Florida. *See, e.g.,* AR796 (IJ Order denying asylum; Immigration Court located in Orlando, Florida).

While pursuing his asylum petition, Mr. Madjitov married Petitioner Mamadjonova on September 14, 2010. [ECF No. 22-9]. On September 15, 2012, Ms. Mamadjonova filed a Form I-130 Petition for Alien Relative, which establishes that an alien is a spouse of a permanent United States resident, which Ms. Mamadjonova was at that time. [ECF No. 22-4]. The petition was approved on September 16, 2013. *Id.*

On December 21, 2017, Magistrate Judge Sarah Merriam signed out a criminal Complaint charging Petitioner Mamadjonova's brother, Sidikjon Mamadjonov, with unlawful procurement of naturalization in violation of 18 U.S.C. § 1425, false statements on a naturalization application, in violation of 18 U.S.C. § 1015, and false oath or declaration under penalty of perjury in violation of 18 U.S.C. § 1546. *United States v. Mamadjonov*, No. 3:18-cr-00034-VAB, ECF No. 1 (D. Conn. Dec. 21, 2017). The false statements allegedly concerned lies about his alleged association with a member of a known terrorist organization, Petitioner Mamadjonova and Sidikjon Mamadjonov's brother, Saidjon Mamadjonov. *Id.* at 5. When questioned by the FBI about flying to Turkey to meet with Saidjon, Sidikjon Mamadjonov stated that he took $20,000 in cash with him to make amends with his brother, and that his brother likely had gone to Dubai to start a business, when in fact Sidikjon Mamadjonov knew that his brother Saidjon had been killed in May or June 2013 fighting in Syria with the "Nusra" group, which was affiliated with ISIS. *Id.* at 7. Sidikjon Mamadjonov was arrested one day after being charged in the Complaint, on December 22, 2017.

That same day, December 22, 2017, Petitioner Madjitov was detained by ICE incident to the final order for his removal, and he remains detained to this day. [ECF No. 22 ¶ 2].

On January 17, 2018, Mr. Madjitov filed a Motion to Reopen and an Emergency Motion to Stay Removal with the BIA. AR471-543, 544-67. On May 25, 2018, the BIA denied the Motion to Reopen and Emergency Motion to Stay, finding it untimely under 8 U.S.C. § 1229a(c)(7) because it was not filed within 90 days of the final order of removal and because "[t]he motion d[id] not demonstrate an exceptional situation that would warrant the exercise of our discretion to reopen these proceedings under our sua sponte authority." AR452.

One week later, on June 1, 2018, Petitioner Madjitov filed another Motion to Reopen and Motion to Stay Removal, noting that the BIA, in its May 25, 2018 denial had failed to consider Petitioner Madjitov's March 5, 2018 Amended Motion to Reopen, which was identical to the present one. AR11-17. In the Motion, Petitioner Madjitov argued that his immigration proceedings should be reopened and his removal stayed because of changed country conditions in Uzbekistan making it more dangerous for him to return there, especially in light of the December 2017 arrest of his brother-in-law, Sidikjon Mamadjonov and Uzbekistan's known increase in world-wide surveillance of those that might have a connection to terrorism. *Id.* The Motion included greatly expanded exhibits providing information on Uzbekistan's surveillance activities. AR36-449.

On July 30, 2018, Petitioner Madjitov filed a petition for a writ of habeas corpus in the Northern District of Alabama, challenging the allegedly

unconstitutionally overlong period of detention he had suffered and claiming that venue was proper because he was housed in the Etowah detention facility in Gadsden, Alabama. *Madjitov v. Hassel*, No. 4:18-cv-01188-RDP-HNJ, ECF No. 1 at 6 (N.D. Ala. July 30, 2018). On May 3, 2019, Magistrate Judge Herman N. Johnson, Jr. recommended dismissal without prejudice to refiling at a later, appropriate time, because Mr. Madjitov had contributed to the length of his detention by filing appeals with the BIA and by refusing to sign paperwork authorizing his removal. *Id.*, ECF No. 10 at 5-8.[3] In response, Mr. Madjitov filed another petition for a writ of habeas corpus, in which he again argued that venue was proper "because the Petitioner is detained at Etowah County Jail in Gadsden, Alabama," and in which he again argued that his detention was unconstitutionally overlong. *Id.*, ECF No. 11 at 5-17. On May 21, 2019, the district court adopted the Magistrate Judge's Recommendation and dismissed Petitioner Madjitov's petition without prejudice to refiling at a later, appropriate time. *Id.*, ECF No. 12.

On May 31, 2019, the BIA denied Petitioner Madjitov's Motion to Stay, because "the Board has concluded that there is little likelihood that the motion [to reopen] will be granted." [ECF No. 1-5].

On June 7, 2019, Mr. Majitov filed a petition for review with the Third Circuit seeking review of the BIA's denial of his motion to stay removal. *Madjitov. V. Attorney General*, No. 19-2327 (3d Cir. June 7, 0219). On June 10, 2019, Third

---

[3] Magistrate Judge Johnson also noted that while ICE's Enforcement and Removal Operations Division in Boston, Massachusetts had placed Mr. Madjitov in a "failure to comply" status on January 26, 2018 when he refused to sign his removal paperwork shortly after his detention, once he got to Etowah, ICE's New Orleans Filed Office was the office that decided to continue his detention on August 10, 2018. *Id.* at 3.

Circuit Judge L. Felipe Restrepo granted the motion to stay removal "temporarily in order to allow a full panel of this Court the opportunity to review and consider Petitioner's motion for stay of removal." *Id.* (3d Cir. June 10, 2019). After review by a full panel, the Third Circuit vacated Judge Restrepo's stay because the BIA's denial of Mr. Madjitov's Motion for Stay was not a reviewable final order of removal absent a ruling on Mr. Madjitov's Motion to Reopen immigration proceedings. *Id.* (3d Cir. July 30, 2019).

The Third Circuit also noted that "once the BIA rules on his second motion to reopen[,] . . . [n]othing in this order prevents Petitioner from filing a new petition for review in the Eleventh Circuit," which is the place of "proper venue." *Id.* (citing 8 U.S.C. § 1252(b)(2), which states that "[t]he petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings," here, the Eleventh Circuit since, as noted, the immigration proceedings were completed in Orlando, FL).

On August 5, 2019, Mr. Madjitov filed a petition for writ of habeas corpus in the Western District of Louisiana, noting that his current place of detention was the La Salle Detention Facility in Jena, Louisiana, and again arguing that the length of his detention has been unconstitutionally overlong, without mentioning the proceedings in the Northern District of Alabama. *Madjitov v. Barr*, No. 1:19-cv-01012-DDD-JPM, ECF No. 1 (W.D. La. Aug. 5, 2019). Mr. Madjitov's case in the Western District of Louisiana remains pending and the Court has imposed a November 14, 2019 deadline for Mr. Madjitov to comply with the Court's

September 16, 2019 Memorandum Order directing Mr. Madjitov to amend his habeas petition. *Id.* [ECF Nos. 8, 13].

Approximately three weeks after filing his habeas corpus case pending in the Western District of Louisiana, Mr. Madjitov filed the instant petition for writ of habeas corpus and Motion for preliminary injunction and TRO petition together with his wife. [ECF Nos. 1, 2]. Although not making an affirmative allegation as to why venue was proper in this Court, the Petitioners asserted that "[n]o Supreme Court or Second Circuit precedent applicable to immigration detainees, nor the habeas statute, indicate that venue is not proper in the District of Connecticut." [ECF No. 1 at 11 (citing 28 U.S.C. § 2241)]. On August 29, 2019, the Court ordered the Petitioners "to inform the Court as to the location of Petitioner Madjitov's current detention and which organization and where is Petitioner Madjitov's pending Motion to Reopen his Immigration Proceedings being adjudicated by 09/05/2019." [ECF No. 7]. On September 5, 2019, the Petitioners did so, noting that Mr. Madjitov was housed at the "Jena/La Salle Detention Facility in Jena, Louisiana under the legal and immediate custody of Respondent Lyons," and that his immigration proceedings were being conducted before the BIA in Falls Church, Virginia. [ECF No. 13 at 1]. In reliance on these representations filed by Petitioner's counsel and without knowledge that Petitioner had a prior habeas petition still pending in the Western District of Louisiana, the Court ordered the Government to show cause by September 27, 2019 why the Petitioners petition for a writ of habeas corpus and motion for TRO should not be granted. [ECF No. 15].

On September 10, 2019, the Petitioners filed another motion before this court for a TRO to prevent the "imminent" removal of Mr. Madjitov. [ECF No. 17]. The Court held a telephonic status conference the next day, September 11, 2019, in which the Government informed the Court that Mr. Madjitov had been moved from the Lasalle Detention Facility in Jena, Louisiana to the Etowah Detention Facility in Gadsden, Alabama, and that Mr. Madjitov's removal was not, in fact, imminent. In light of the Government's representation, the Court denied the Petitioners second motion as moot the same day. [ECF No. 20].

On September 13, 2019, the BIA denied Mr. Madjitov's second motion to reopen his immigration proceedings, finding that Mr. Madjitov "has not shown that he is prima facie eligible for asylum or related relief," and that "[t]he motion does not demonstrate an exceptional situation that would warrant the exercise of our discretion to reopen these proceedings under our sua sponte authority." [ECF No. 22-5 at 2-3]. On September 16, 2019, the Petitioners filed an amended petition for writ of habeas corpus in the instant matter, deleting reference to the previously pending motion to reopen before the BIA. [ECF NO. 22].

On September 30, 2019, Mr. Madjitov filed a petition for review of the BIA's denial of his second motion to reopen in the Eleventh Circuit. *Madjitov v. Barr*, No. 19-13865 (11th Cir. Sept. 30, 2019). Mr. Madjitov asserted in the petition that the Eleventh Circuit had jurisdiction "pursuant to 8 U.S.C. §1252(a)(1)/§309(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996(IIRIRA) as amended by §106 of the REAL ID Act of 2005." *Id.* at 1. Mr. Madjitov also asserted that venue was proper in the Eleventh Circuit "[p]ursuant to 8 U.S.C.

§1252(b)/IIRIRA §309(c)(4)(D) because the "ICE" [sic] completed proceedings in Florida, within the jurisdiction of this judicial circuit." *Id.* at 2. On October 9, 2019, Mr. Madjitov filed a certificate of interested persons, listing (i) Attorney General of the United States William P. Barr, (ii) Office of Chief Counsel DHS/ICE Orlando Florida, and (iii) Office of the Clerk U.S. Court of Appeals for the Eleventh Circuit.

## Legal Standard

Under the Immigration and Nationality Act, "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). "For purposes of this Act, in every provision that limits or eliminates judicial review or jurisdiction to review, the term 'judicial review' and 'jurisdiction to review' includes habeas corpus review pursuant to section 2241 of title 28, United States Code, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory)." *Id.* "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this title shall be available only in judicial review of a final order under this section. . . . [N]o court shall have jurisdiction, by habeas corpus under section 2241 of title 28, United States Code, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law

(statutory or nonstatutory), to review such an order or such questions of law and fact."  8 U.S.C. § 1252(b)(9).

The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings.  8 U.S.C. § 1252(b)(2).

"[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act."  8 U.S.C. § 1252(g).

In cases where a party brings a challenge against immigration authorities apart from a direct challenge to an order of removal, "whether the district court will have jurisdiction will turn on the substance of the relief that the plaintiff is seeking."  *Delgado v. Quarantillo*, 643 F.3d 52, 55 92d Cir. 2011).  Where a party brings a challenge against immigration authorities that is "inextricably linked to" the order of removal, and constitutes an indirect challenge to same, no district court jurisdiction will lie pursuant to  8 U.S.C. § 1252(a)(5).  *Id.*[4]

"It is within the district court's discretion to determine whether a hearing is warranted."  *Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003) (holding that even where factual issues may exist, Second Circuit precedent permits a "middle road" of deciding disputed facts on the basis of written submissions); s*ee also*

---

[4] In *Delgado*, the Court provided two examples of challenges that a district court *would* have jurisdiction over.  The first is a challenge to an unconstitutional arrest and detention, unrelated to the underlying administrative order of removal. *Delgado*, 643 F.3d at 55.  The second is a challenge to the denial of an I-130 petition for classification of an alien as an immediate relative of a U.S. citizen, which is "unrelated to any removal action or proceeding."  *Id.* n.3.

*Johnson v. Fogg*, 653 F.2d 750, 753 (2d Cir. 1981) (holding that district court was not required to provide a hearing to a litigant who did not raise issues sufficient to warrant a hearing).

<u>Analysis</u>

The Court determines that it does not have subject matter jurisdiction over the petitioners' claims, for two reasons.[5]  First, while the Court agrees that the Petitioners do not directly attack the order of removal, their claims amount to an indirect attack on the order of removal, over which the Court lacks jurisdiction. Second, the Court is without jurisdiction to adjudicate a stay of execution of Mr. Madjitov's removal order.

*Delgado* was a case in in which a petitioner petitioned for a writ of mandamus to compel immigration authorities "to consider her I-212 application for permission to reapply after deportation."  *Delgado v. Quarantillo*, No. 08 Civ. 9058 (DC), 2010 U.S. Dist. LEXIS 19654, at *1 (S.D.N.Y. Mar. 2, 2010).  The district court found that it did not have subject matter jurisdiction despite "Delgado repeatedly stat[ing] in her papers that she does not contest the reinstatement of her removal order."  *Id.* at *6.  The district court held that "[o]f course, ultimately Delgado *is* challenging her removal – she wants to remain in the United States. *Id.* at *7 (emphasis in original).  Noting that Congress' intent in passing the 2005 Real ID Act amendments to the INA was "to have all challenges to removal orders

---

[5] Because the Court finds that it has no jurisdiction over Petitioner's claims, it does not address venue, because no district court would have jurisdiction over these claims, and it also does not address the merits of Petitioner's claims, as doing so would amount to an improper advisory opinion in the face of a lack of subject matter jurisdiction.

heard in a single forum [and to] limit all aliens to one bite of the apple . . . and thereby streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts . . . and the courts of appeal," the Court held that it "d[id] not have jurisdiction to hear Delgado's claims because ultimately she is challenging her removal from the United States." *Id.* at *7-8.

The Second Circuit affirmed in a case of first impression. "We conclude that Delgado is indirectly challenging her reinstated order of removal, and accordingly, we hold that section 1252(a)(5)'s jurisdictional bar applies equally to preclude such an indirect challenge." *Delgado*, 643 F.3d at 55. The Court rejected Delgado's argument that she was not challenging the order of removal because even if the I-212 waiver was granted, that would not "per se prevent her removal." *Id.* Rather, according to the *Delgado* court, what mattered was that obtaining such a waiver was a "necessary prerequisite to her ultimate goal of adjustment of status." *Id.* The court "agree[d] with the Ninth Circuit's conclusion that an 'adjustment-of-status challenge is inextricably linked to the reinstatement of [an alien's] removal order.'" *Id.* (quoting *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1082-83 (9th Cir. 2010)). Most importantly, the court held that "whether a district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Id.* *Delgado* held that adjustment-of-status challenges do not confer jurisdiction on a district court, but challenges to detention apart from any challenge to an order of removal would, *id.* (citing *Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006)), as would

challenges seeking review of the denial of an I-130 petition for classification of an alien as an immediate relative of a U.S. citizen, "because such a denial is unrelated to any removal action or proceeding." *Id.* n.3.

In *Achbani v. Homan*, Judge Arterton held, in a case almost identical to the case at bar, that the Second Circuit's reasoning in *Delgado* meant the court lacked jurisdiction. In *Achbani*, as here, the petitioner argued that "he ha[d] the right to be free from detention and removal during the pendency of his application for a provisional unlawful presence waiver." *Achbani v. Homan*, No. 3:17-cv-1512 (JBA), 2017 U.S. Dist. LEXIS 155978, at *12 (D. Conn. Sept. 22, 2017). The *Achbani* petitioner also, as here, claimed that immigration authorities' actions "prohibit[ed him] from applying for the unlawful presence provisional waiver application while remaining with his family in the United States," and that "the continuing decision to detain and attempt to remove [him] to Morocco and to deny him the right to apply for the provisional unlawful presence waiver, as amended at 8 CFR 212.7(e)(4)(iv), are unlawful violations of the INA, APA and the Due Process Clause of the Fifth Amendment to the United States Constitution." *Id.* at *12-13. Unlike Mr. Madjitov, however, who has completed only the first step of the three-step provisional unlawful presence waiver, Achbani had completed the first and second step, making his completion of the process much more swift and likely. Even so, the court held that Achbani's argument failed because it "necessarily indirectly challenges the final removal order because he claims a right to remain in the U.S., which is interfered with by his ICE detention, whose purpose is to facilitate his physical removal from the United States. Given the

substance of the relief Plaintiff seeks, the Court lacks subject matter jurisdiction under the reasoning of *Delgado*, 643 F.3d at 54." *Id.* at *15.

Under *Delgado*, it is the substance of the relief the petitioner seeks that matters. 643 F.3d at 55. And, an adjustment-of-status challenge, which Mr. Madjitov asserts, which seeks to change Mr. Madjitov's status from illegal and removable to legal and non-removable, is exactly the kind of challenge that constitutes an indirect challenge to an order of removal. Mr. Madjitov seeks to have the Court stay his removal so that he can more easily pursue a provisional unlawful presence waiver, with the ultimate goal of staying in the United States, i.e. not being removed. After *Delgado*, the Court does not have subject matter jurisdiction to hear this challenge. This is not a case, like the two cited in *Delgado*, in which a petitioner challenges his arrest and detention apart from his removal, nor is it one in which a petitioner challenges the denial of I-130 petition, where the Court *would* have jurisdiction. *Id.* n.3.; *Delgado*, 2010 U.S. Dist. LEXIS 19654, at *6.

The Petitioners argue that *Delgado* is inapposite because it was a mandamus action and because in *Delgado* grant of the petition would have necessarily nullified the removal order. [ECF No. 25 at 22]. The Petitioners fail, however, like the petitioner in *Achbani*, to consider the "substance of the relief" Mr. Madjitov seeks, which is controlling. As explained, because Mr. Madjitov seeks to have the Court stay his removal so that he can more easily pursue a provisional unlawful presence waiver, with the ultimate goal of staying in the United States, i.e. not being removed, the Court, after *Delgado*, does not have

subject matter jurisdiction to hear this challenge. The fact that *Delgado* was a mandamus action is a distinction without a difference, as the Petitioners effectively seek such a writ, with the Court compelling immigration authorities to release and stay Mr. Madjitov's order of removal to allow him to pursue his provisional unlawful presence waiver.

The Petitioners fail to substantively address *Achbani*,[6] which was one of only two cases cited in the Government's brief and which, as noted above, holds that a Court does not have subject matter jurisdiction over a case in which the Court is asked to compel immigration authorities to release a petitioner and stay an order of removal to allow the petitioner to pursue a provisional unlawful presence waiver, effectively reversing the removal order.

The Court also lacks subject matter jurisdiction for the separate reason that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien under this Act." 8 U.S.C. § 1252(g) (emphasis added). The Petitioners claim that they are not seeking to challenge the Attorney General's discretionary decision to execute Mr. Madjitov's removal order, but that claim is belied by their actions upon being informed that Mr. Madjitov was about to be removed; they filed an "URGENT Request for Temporary Stay or Ruling on TRO Request," which was styled on the docket as a "Second MOTION for Temporary Restraining Order

---

[6] The Petitioners state that the *Achbani* Court "appeared confused" and invite the Court not to follow that ruling. [ECF No. 25 at 32 n.7]. The Court declines the Petitioners' invitation.

*to PREVENT IMMINENT REMOVAL*." [ECF No. 17 (emphasis in original)]. Like the petitioner in *Achbani*, 2017 U.S. Dist. LEXIS 155978, at *11-12, during the teleconference following the filing of this motion, the Petitioners' counsel made clear that the greatest concern was for Mr. Madjitov's imminent removal; the Petitioners sought to have the Court enjoin the Attorney General's discretionary decision to have Mr. Madjitov removed. This the Court cannot do. 8 U.S.C. § 1252(g); *Reno v. Am. Anti-Arab Discrimination Comm.*, 525 U.S. 471, 482 (1999).

Courts in this district have repeatedly so held. *See Pomaquiza v. Sessions*, No. 3:17-cv-01549 (JAM), 2017 U.S. Dist. LEXIS 163163, at *4-6 (D. Conn. Oct. 3, 2017) (holding Court lacked subject matter jurisdiction to stay removal pending litigation of claims that denial of motion to stay removal and procedures employed to do so violated the Administrative Procedure Act and constitutional right to due process); *De Souza v. Sessions*, No. 3:18-cv-1250 (AWT), 2018 U.S. Dist. LEXIS 126462, at *1-2 (D. Conn. July 30, 2018) (citing *Pomaquiza* approvingly and finding the court lacked subject matter jurisdiction over motion for TRO staying execution of final order of removal even though petitioner claimed that if he was removed he would lose the right to relief based on recent, intervening caselaw that supported his motion to reopen his immigration proceedings); *Walton v. Nielsen*, No. 3:18-cv-2014 (MPS), ECF No. 17, Tr. At 29-32 (D. Conn. Dec. 13, 2018) (same).

The Petitioners argue that if the Court decides that it lacks subject matter jurisdiction to hear the Petitioners' claims, the INA is unconstitutional for violating the Suspension Clause because the Petitioners have no other avenue to

have their claims heard.  The Court disagrees.  Under the INA, in a subsection entitled "Consolidation of questions for judicial review," the statute expressly allows a reviewing court to consider all questions of law, not just the order of removal itself: "Judicial review of *all questions of law and fact*, including interpretation and application of *constitutional and statutory provisions*, arising from any action taken or proceeding brought to remove an alien from the United States under this title shall be available only in judicial review of a final order under this section."  8 U.S.C. § 1252(b)(9) (emphasis added).  And such judicial review is proper *only* in a circuit court of appeals: "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal."  8 U.S.C. § 1252(a)(5).  This Court can discern no reason Mr. Madjitov cannot have the questions presented here decided in his petition for review before the Eleventh Circuit.  *Madjitov v. Barr*, No. 19-13865 (11th Cir. Sept. 30, 2019).  Mr. Madjitov has availed himself of the appropriate avenue for relief, and the Petitioners have cited no authority that would preclude the Eleventh Circuit from reviewing Mr. Madjitov's claim that he should be allowed to pursue his provisional unlawful presence waiver.

In sum, the Court lacks subject matter jurisdiction over the Petitioners' indirect challenge to Mr. Madjitov's order of removal.  For this reason, the Petitioners' Petition for a Writ of Habeas Corpus, [ECF No. 1, as amended by ECF No. 22], and Motion for TRO, [ECF No. 2], are DENIED.

## Conclusion

There is no need for this Court to conduct a hearing on this habeas motion. Although courts generally "look with disfavor on summary rejection of a habeas petition," *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir.1990) (quotation omitted), the text of § 2255 provides that the Court need not conduct a hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b) (2014); *see also Aiello*, 900 F.2d at 534 (finding no reversible error in the failure to conduct a hearing where the district court had presided over the trial and was therefore "intimately familiar with the detailed factual record" and where petition's "allegations were patently meritless."); *see also Johnson v. Fogg*, 653 F.2d at 753 (holding that district court was not required to provide a hearing to a *pro se* litigant who did not raise issues sufficient to warrant a hearing). This case turns on a question of law as to which there is no factual dispute. Conducting a hearing would be an empty gesture wasteful of judicial resources.

The Court holds Petitioners are not entitled to relief on their claims because the Court lacks subject matter jurisdiction. Therefore, this Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241 is DENIED. The Court denies a certificate of appealability because jurists of reason would not find this procedural ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**IT IS SO ORDERED.**

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


**Dated at Hartford, Connecticut: November 20, 2019**